# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

COREY THOMAS,

      Petitioner,

v.                                                    Case No. 3:20-cv-896-TJC-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

# ORDER

## I.    Status

Petitioner, an inmate of the Florida penal system, initiated this case by filing a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254, Doc. 1, and a Memorandum of Law, Doc. 1-1. He is challenging a state court (Duval County, Florida) judgment of conviction for three counts of armed robbery. He is serving concurrent thirty-year terms of incarceration with a thirty-year minimum mandatory as a prison releasee reoffender (PRR) as to each count. Doc. 1. Respondents have responded. See Doc. 14; Response.[1] Petitioner filed a Reply. See Doc. 18. This case is ripe for review.

---

[1] Attached to the Response are numerous exhibits. See Doc. 14-1 through Doc. 14-5. This Court cites the exhibits as "Resp. Ex."

## II.    Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or

> argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear

3

> error) with unreasonableness."); <u>Williams v. Taylor</u>,
> 529 U.S. 362, 410 (2000) ("[A]n unreasonable
> application of federal law is different from an incorrect
> application of federal law.").

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal

citations modified).

### B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254

habeas action in federal court, a petitioner must exhaust all state court

remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C.

§ 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]"

every issue raised in his federal petition to the state's highest court, either on

direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351

(1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners

must give the state courts one full opportunity to resolve any constitutional

issues by invoking one complete round of the State's established appellate

review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope</u>

<u>v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the

state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state
> prisoner must exhaust available state remedies, 28
> U.S.C. § 2254(b)(1), thereby giving the State the
> "'opportunity to pass upon and correct' alleged

4

> violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[2] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[3] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to

---

[2] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[3] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

5

> deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

---

[4] Murray v. Carrier, 477 U.S. 478 (1986).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases,

allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).  To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance.  Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other."  Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010).  Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa."  Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the

ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also Evans v. Sec'y, Dep't of Corr.</u>, 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III. **Petitioner's Claims and Analysis**

### A. Ground One

Petitioner maintains the trial court erroneously designated him as a PRR because armed robbery is not an enumerated felony in the PRR statute. Doc. 1 at 5. He argues the trial court failed to hold a hearing to review whether his armed robbery conviction qualified him for the sentencing enhancement. Id. Without the PRR designation, Petitioner contends the sentencing guidelines authorized the trial court to impose a sentence between 97 and 158 months. Id. Respondents allege this claim raises only an error of state law, which is not cognizable on federal habeas corpus review. Resp. at 19, 23.

A federal court may not review a state court's alleged failure to adhere to the state's sentencing requirements, which is purely a state law issue. See Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988). Only when a state law error rises to the level of fundamental unfairness does it implicate federal constitutional due process, subjecting it to federal habeas review. See Osborne v. Wainwright, 720 F.2d 1237, 1238 (11th Cir. 1983). Whether armed robbery qualifies for a PRR sentencing enhancement is a question of state law outside of this Court's federal habeas purview. Further, upon a review of the allegations, this Court finds no sentencing error that rises to the level of fundamental unfairness. Armed robbery qualifies as an enumerated felony under the PRR statute. § 775.082(9)(a)1, Fla. Stat.; see generally McDonald v.

State, 957 So. 2d 605, 607 (Fla. 2007) (recognizing defendant convicted of armed robbery qualified as a PRR). Because this claim deals with an alleged state court sentencing error and does not amount to fundamental unfairness, this claim is not properly before this Court.

Even assuming this Court could review this claim, the state court's adjudication of this issue is entitled to deference. Petitioner raised this issue in a motion to correct illegal sentence filed under Florida Rule of Criminal Procedure 3.800(a). Resp. Ex. N at 1−3. The trial court summarily denied the claim. Id. at 5−6. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. Q. In applying deference, this Court finds that the state court properly found no error in Petitioner's PRR adjudication.

Also, for the first time in his Reply brief, Petitioner claims the PRR statute is unconstitutional because a jury does not make the requisite findings to allow for the enhancement, citing Apprendi,[5] Blakely,[6] and Alleyne,[7] among others. Doc. 18 at 3−5. Petitioner maintains the trial court erred in failing to hold a hearing to have the jury determine his eligibility. Doc. 18 at 7. Initially, arguments raised for the first time in a reply brief are not properly before a

---

[5] Apprendi v. New Jersey, 530 U.S. 466 (2000).

[6] Blakely v. Washington, 542 U.S. 296 (2004).

[7] Alleyne v. United States, 570 U.S. 99 (2013).

reviewing court. <u>See</u> <u>Herring v. Sec'y, Dep't of Corr.</u>, 397 F.3d 1338, 1342 (11th Cir. 2005) (citations omitted); <u>Garcia v. Sec'y, Dept. of Corr.</u>, No. 8:10-cv-2116-T-27MAP, 2013 WL 3776674, at *4–5 (M.D. Fla., July 17, 2013) (noting that habeas petitioner's new claim raised in his reply was not authorized, where the Rules Governing Habeas Corpus Cases Under Section 2254 required all grounds for relief to be stated in the petition, and petitioner failed to seek leave to amend his petition after a response had been served).

Nevertheless, even assuming these new claims are properly before the court they are unexhausted and procedurally defaulted. He fails to argue cause for or prejudice from this procedural default, nor does he claim that failure to consider the merits of this claim will amount to a fundamental miscarriage of justice. Moreover, Florida courts have found the PPR statute does not run afoul of <u>Apprendi</u>, <u>Blakely</u>, and <u>Alleyne</u>. <u>Robinson v. State</u>, 793 So. 2d 891, 893 (Fla. 2001) (addressing <u>Apprendi</u>), <u>Peterson v. State</u>, 911 So. 2d 184, 185 (Fla. 1st DCA 2005) (discussing <u>Apprendi</u> and <u>Blakely</u>); <u>Williams v. State</u>, 143 So. 3d 423, 424 (Fla. 1st DCA 2014) (addressing <u>Alleyne</u>). Petitioner is thus not entitled to relief on Ground One.

## B. Ground Two

Petitioner alleges his trial counsel was ineffective for failing to advise him of the maximum sentence he faced if convicted of the charges in the Information. Doc. 1 at 7. Petitioner contends that had counsel informed him of the maximum

12

penalty, he would have accepted the state's plea offer of ten years with no enhancements rather than going to trial, after which he received a thirty-year term with a thirty-year minimum mandatory as a PRR.

Petitioner raised this issue in his amended motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.850. Resp. Ex. L at 85−86. In a partial order addressing Petitioner's amended Rule 3.850 motion, the trial court dismissed this claim, finding it untimely filed. Id. at 89, 91. Subsequently, the trial court entered a final order summarily denying the remaining Rule 3.850 claims. Petitioner sought an appeal challenging the entirety of the Rule 3.850 proceedings. Id. at 173−201, 468. The First DCA per curiam affirmed the trial court's orders, including its dismissal of the claim as untimely, without a written opinion. Resp. Ex. M.

As such, this claim is procedurally barred from federal habeas review because the state court dismissed the claim on an adequate and independent state procedural ground. Indeed, the Eleventh Circuit has recognized Florida's procedural rule prohibiting untimely motions as an independent and adequate state procedural bar. See Crayton v. Sec'y, Dep't of Corr., No. 17-15290-C, 2019 WL 2374452, at *5 (11th Cir. May 15, 2019) ("The state court's dismissal of [Petitioner's] Rule 3.850 motion as untimely is an adequate, independent ground barring him from raising the claim in federal court."); Castro v. Everglades Corr. Inst., 481 F. App'x 560, 562 (11th Cir. 2012) (holding that a

state court's determination that the petitioner's claims were procedurally barred by Florida's rule against untimely motions was a state law ground independent of the federal question and adequate to support that state court's judgment, rendering the claims procedurally defaulted on federal habeas review). There is no evidence that the state courts applied its procedural rule in an "arbitrary or unprecedented fashion" or in a "manifestly unfair manner." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). Petitioner does not argue cause for or prejudice from this procedural default, nor does he claim that failure to consider the merits of this claim will amount to a fundamental miscarriage of justice. Thus, Ground Two is is procedurally barred from federal habeas consideration and due to be denied.

## C. Ground Three

Petitioner contends his trial counsel was ineffective for misadvising him to not testify. Doc. 1 at 8. Petitioner states that counsel assured him that her opening statement combined with the cross-examination of the witnesses conveyed his version of events and he did not need to testify. Doc. 1-1 at 18. Petitioner maintains his testimony was the only evidence that could support his defense and he was thereby prejudiced from counsel's advice to not testify. Doc. 1 at 8, Doc. 1-1 at 18−19.

Petitioner raised this issue in his Rule 3.850 motion. Resp. Ex. L at 18−24. The trial court summarily denied the claim:

Here, the record refutes Defendant's instant contentions. It shows Defendant voluntarily testified under oath during his colloquy with the trial judge that he had the opportunity to speak with his attorneys about his decision to testify, he made the decision as to whether he wished to testify, and he did not want to testify. Defendant affirmed he understood he could not "complain on a later date" that he was not given the opportunity to testify. This Court finds the record conclusively shows that Defendant waived his right to testify. The trial court's questions of Defendant also cured any alleged misadvice by counsel. See Bluntson, 98 So. 3d at 627. Accordingly, Defendant may not seek to go behind his prior sworn testimony to the trial judge in which he testified that he did not wish to testify, and now argue he wanted to testify and place blame on counsel for his decision. See Gonzalez, 990 So. 2d at 1031.

Further, this Court finds counsel's advice to Defendant was not unreasonable or deficient. Defendant's prior statements to Detective Cullen reached the jury through his interview and transcript of it as discussed *supra* in Ground Two. Therefore, he faced the grave possibility of impeachment by these prior statements if he provided trial testimony which was inconsistent with or contradicted his prior statements. See §§ 90.608, 90.614, Fla. Stat. (2010). Such consequences would have severely undermined Defendant's credibility and his version of events. See Simon, 47 So. 3d at 885.

Additionally, counsel exhaustively presented Defendant's version of events to the jurors through closing arguments. Counsel also cast doubt on the victims' testimony by attacking their credibility and trial testimony in light of the evidence. Specifically, counsel argued that while Defendant added details throughout his interview with Detective Cullen, he also offered a consistent version of events throughout the entire interview.

Resp. Ex. L at 186–87 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. M. To the extent that the First DCA affirmed the trial court's denial on the merits, this Court will discuss this claim under the deferential standard for federal court

review of state court adjudications. In applying such deference, this Court finds the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Nevertheless, even if the state court's adjudication of this claim is not entitled to deference, Petitioner's claim lacks merit. The jury heard through the recorded interview Petitioner's defense and version of events, including details of the alleged drug deal gone awry. Thus, the version of events Petitioner now claims he would have testified to are those that the jury already heard. Notably, Petitioner's defense at trial was that he approached Sean Pilgrim, one of the victims, to purchase drugs after he saw and smelled him using drugs. Resp. Exs. D at 99, 102, 115, 130; E at 215. After exchanging funds, Pilgrim returned with drugs, but Petitioner disputed the amount he received. Resp. Ex. D at 102−04. An altercation ensued which moved into the hotel room. Id. at 104, 106. Petitioner had a female acquaintance with him who took items from the hotel room and stole a vehicle belonging to one of the victims. Resp. Exs. D at 123, 133, 152−53; E at 219−20.

Trial counsel cross-examined each of the state's witnesses, highlighting holes in their testimony, to help support Petitioner's version of events detailed in his recorded interview with law enforcement. Through cross-examination,

trial counsel elicited evidence that Brittany Withers, one of the victims, returned to the hotel room shortly before the offense occurred and did not know what had taken place before she returned. Id. at 68. Trial counsel tailored questions about Pilgrim's marijuana usage, including whether the food in the hotel room were "munchies," and questioned whether Pilgrim was trying to sell marijuana that day. Id. at 56–57. With Anna Jarquin's testimony, a witness who later saw Petitioner with the victim's stolen vehicle, trial counsel challenged her ability to adequately describe the individuals, having her admit that she could not make out facial features or definitively identify body shapes because both individuals were wearing loose clothing. Id. at 76–77. These tactics on cross-examination supported the version of events Petitioner now sets forth and argues he would have presented through his own testimony. Also, when asked by the trial court if he wished to testify, Petitioner stated, under oath, that he did not want to exercise that right. Resp. Ex. D at 181–82. Petitioner made this decision even after the trial court warned Petitioner he could not complain about this decision at a later date. Id. at 180.

Indeed, had he testified, the state would have no doubt cross-examined Petitioner about his statements during his police interview, trying to poke holes in his theory of defense. Any inconsistency between his pretrial and potential trial statements would have damaged his credibility. Thus, this Court finds reasonable trial counsel's decision to not open Petitioner to that possibility,

especially when the jury already heard his version of events through his recorded interview. On this record, Petitioner cannot show that no competent counsel would have advised him not to testify. See Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) ("And because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable a petitioner must establish that no competent counsel would have taken the action that his counsel did take."). Likewise, assuming arguendo counsel performed deficiently, Petitioner has not shown a reasonable probability exists that the outcome would have been different had counsel advised him to testify. Thus, Ground Three is denied.

## D. Ground Four

Petitioner argues his trial counsel was ineffective for failing to object to the state's improper comments during closing argument and move for a mistrial or curative instruction. Doc. 1 at 10. Petitioner challenges the comments below made by the state during closing argument:

> Now I would love to stand up here and wave the recovered gun at you, and say here, it is here, here is the literally smoking gun that we have. We don't have that. Don't reward this defendant for being a good criminal.
>
> . . . .
>
> Now, I wish maybe, you know, there had been an officer just happened to walk by as this was happening, but unfortunately, again, that didn't happen. This defendant gets away for a few weeks before he's arrested. He could have done any number of things with that firearm that he used. But let's go back to the consistent

> testimony of the credible witnesses, the three victims, all of them described the gun the same, they all said that this defendant was the one with the gun, consistent stories through and through. And again, don't reward this defendant for being a good criminal, just because the State does not have a firearm to wave in front of you.

Resp. Ex. D at 196−98. Petitioner contends these comments from the state referenced conduct not in evidence, shifted the burden of proof so he had to explain what happened to the firearm, vouched for the credibility of the witnesses, and implied that Petitioner engaged in witness tampering.

Petitioner raised this issue in his Rule 3.850 motion. Resp. Ex. L at 34−41. The trial court summarily denied the claim, addressing the issue as follows:

> Third, Defendant argues the prosecutor presented facts not in evidence, shifted the burden to the Defense to explain where the firearm was, inferred that Defendant tampered with evidence, and vouched for the victims' credibility . . . This Court has placed in context the selected arguments which Defendant presented in his instant Motion. The emphasized excerpts that Defendant presented do not accurately depict the entire argument. Placed in context, this argument sought to demonstrate to the jurors that "use of a firearm" was an element of the crimes charged, Armed Robbery; therefore, the jurors could reference the victims' testimony to fulfill this element. Fla. Std. Jury Instr. (Crim.) 15.1 (2010) (stating, "If you find that the defendant carried a firearm in the court of committing the robbery, you should find [him] [her] guilty of robbery with a firearm."). The jurors received this instruction which also provided that the State had the burden of proving the offense of Armed Robbery. This Court concludes that the prosecutor's argument sought to argue to the jurors that although a firearm was not recovered, the trial testimony demonstrated that a firearm was used during the commission of the armed robberies. This argument properly argued the standard jury instruction in terms of the State's evidence. Regarding Defendant's claims that the prosecutor vouched for the victims' credibility by stating, "don't reward this defendant for being a good criminal," this Court finds that the

result of trial could not have been different if counsel had objected to this argument. <u>See Jackson</u>, 147 So. 3d at 486 (finding by discussing evidence presented during trial in terms of witnesses' testimony, prosecutor may ask jury to weigh credibility of witnesses during arguments). Counsel was not ineffective for failing to object to proper arguments.

Resp. Ex. L at 194−95 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. M. To the extent that the First DCA affirmed the trial court's denial on the merits, this Court will address these claims in accordance with the deferential standard for federal court review of state court adjudications.

In applying such deference, this Court finds that the state court adequately determined that Petitioner failed to demonstrate deficiency for trial counsel's alleged error in failing to object to the state's comments in closing argument. A reviewing court must evaluate an allegedly improper comment in the context of both the prosecutor's entire argument and the trial as a whole, because "[c]laims of prosecutorial misconduct are fact-specific inquiries which must be conducted against the backdrop of the entire record." <u>United States v. Hall</u>, 47 F.3d 1091, 1098 (11th Cir. 1995); <u>accord</u> <u>United States v. Young</u>, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

Upon review of the prosecutor's opening, closing, and rebuttal arguments, see Resp. Exs. D at 8−18, 184−200; E at 205−12, 222−36, and in the context of the entire trial record, this Court finds these allegedly improper comments did not affect the fairness of Petitioner's trial. The issue addressed by the prosecutor's comments on the gun was germane, and while the language utilized might have been more restrained,[8] it was not of the type to entitle Petitioner to relief. In context, the prosecutor's comments were not so improper as to affect the fairness of trial as they merely constituted inferences that may be drawn from the evidence already presented to the jury.

Petitioner's contention that counsel should have objected to the arguments during the closing argument would have been fruitless as, under Florida law, attorneys are allowed wide latitude with their arguments in closing. Merck v. State, 975 So. 2d 1054, 1061 (Fla. 2007) ("Attorneys are permitted wide latitude in closing . . .[c]losing argument is an opportunity for counsel to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence."); Evans v. State, 838 So. 2d 1090, 1094 (Fla. 2002) (recognizing "the state cannot comment on a defendant's failure to produce evidence to refute an element of the crime . . . However, a prosecuting

---

[8] The comments about not rewarding Petitioner for being a "good criminal" were brief in the context of the entire closing argument and did not impact the fairness of the trial. See Simpson v. State, 3 So. 3d 1135, 1147 (Fla. 2009) ("the comments were brief and in no way do they constitute fundamental error.").

attorney may comment on the jury's duty to analyze and evaluate the evidence and state his or her contention relative to what conclusions may be drawn from the evidence."). The challenged comments in Petitioner's pleading were reasonably drawn from the evidence and the prosecutor did not ask the jury to convict Petitioner based on anything besides evidence at trial. Upon this record, this Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts considering the evidence in the state court proceedings.

For the first time in his Reply brief, Petitioner maintains counsel should have requested a curative instruction and objected to the principal instruction being read to the jury. Doc. 18 at 13. Again, allegations raised for the first time in a Reply brief are not properly before this Court. Herring, 397 F.3d at 1342. Nevertheless, even assuming this new claim is properly before the court it is unexhausted and procedurally defaulted, and Petitioner fails to argue cause for or prejudice from this procedural default. He also does not claim that failure to consider the merits of this claim will amount to a fundamental miscarriage of justice.

In any event, there was evidence at trial that a second perpetrator was present at the time of the offense. Resp. Ex. D at 30, 48−49, 64−65. Petitioner

admits to the second perpetrator's presence during the interview with law enforcement, which the jury heard at trial. Id. at 122, 128, 130, 132−34. Thus, any objection to the principal instruction would have been meritless given the evidence presented at trial. See Freeman v. Att'y Gen., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); McGriff v. State, 12 So. 3d 894, 894 (Fla. 1st DCA 2009) ("The principals instruction may be given if the evidence adduced at trial supports such an instruction.").

For the reasons set forth above, Ground Four is due to be denied.

**E. Ground Five**

Petitioner argues his trial counsel was ineffective for failing to excise/redact portions of the taped interview that were prejudicial or, in the alternative, file a motion in limine to exclude those parts and object to prejudicial parts being played. Doc. 1 at 11. Specifically, Petitioner takes issue with these statements from Detective Cullen during the taped interview:

> Okay. Well, you do have a warrant out for your arrest and that's why your down here, okay.
>
>                    . . . .
>
> I don't know anything about that. I'm not sure what happened, or how you got down here. But I know the reason you're in here, in this office right now, is because you have a warrant for your arrest. That's why you're right here right now. I'm not sure what happened leading up to that, okay.

> So, and let me tell you this, this is a pretty serious warrant, its been signed by a Judge, okay, and its – and I'm the one that went and got the warrant, okay, and had the Judge sign it, and the State Attorney's Office agree, and the Judge read the warrant and signed it. So, there's a warrant out for you arrest, and its been signed by a Judge.

Resp. Ex. D at 91. Petitioner contends these comments were prejudicial because they implied that the government sanctioned the arrest and that the police, state attorney's office, and judge all agreed to his guilt. Doc. 1-1 at 26–27. Petitioner alleges any competent attorney would have known that references to the procedure employed by Detective Cullen to obtain the warrant were not relevant to any issue at trial and fundamentally undermined the fairness of his trial because the jurors would be inclined to give an officer's testimony more weight. Id. at 27.

Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. L at 11–17. The trial court summarily denied the claim, finding:

> Regarding the interview video as a whole, the record reflects that after jury selection and prior to the start of trial, Defendant agreed with the Defense strategy to play a longer version of the interview video for the jurors. According to the pre-trial discussions, Defendant wanted two hours of the interview played, rather than only eight minutes, with some longer redactions. The trial judge asked Defendant if the decision to play the longer version of the interview was a joint decision that he made with counsel, and Defendant stated "I'm in agreement." Defendant further told the trial judge that he was "[a]bsolutely" in agreement that the "entire video" should be played. Defendant attested that he did not have any questions about the videotape being played during trial. The parties memorialized this agreement through a

stipulation, which was filed with the Clerk of Court on May 17, 2010.

This Court finds Defendant may not now allege counsel was ineffective for taking an action which *Defendant agreed*. See Iacono v. State, 930 So. 2d 829, 831 (Fla. 4th DCA 2006) ("A defendant is not entitled to rely on an attorney's advice to commit perjury above the solemn oath that the defendant makes to the court to tell the truth."); see also Stano v. State, 520 So. 2d 278, 280 (Fla. 1988) (finding it is well-settled in Florida that a defendant may not seek to go behind previous sworn testimony in a motion seeking postconviction relief).

Assuming *arguendo* Defendant could go behind his prior sworn testimony, regarding all of the statements with which Defendant takes issue herein, this Court finds Defendant's arguments fail. The Detective did not engage in improper questioning of Defendant, such that a motion *in limine* to prohibit his statements would have been successful or that the trial judge would have sustained objections by counsel to the statements. See, e.g., Lewis v. State, 204 So. 3d 495, 496 (Fla. 4th DCA 2016) (citing McWatters v. State, 36 So. 3d 613, 638 (Fla. 2010) (finding trial court "did not abuse its discretion in admitting detective's statements during interview with defendant concerning facts that he had gathered from his investigation, as they were not admitted for truth of the matter but solely to provide context and to provoke reaction of defendant.")). See also Davis, 136 So. 3d at 1203−05 (finding detective's statements that defendant was lying not improper).

Indeed, while interviewing Defendant, the record shows the Detective provided a proper background for the interview, including that he had obtained a signed warrant for Defendant's arrest from a judge. During the interview of Defendant, the Detective discussed his interviews with the witnesses involved including the victims, sought to invoke a reaction from Defendant, and provided a context for Defendant's statements. The Detective's statements during the interview also provided an explanation for why the Detective questioned Defendant. See Shrader v. State, 962 So. 2d 369, 371 (Fla. 4th DCA 2007). During trial, the Detective testified about the reasons why he questioned Defendant in this manner. He explained

that to invoke reaction for Defendant, he presented Defendant with facts learned through his investigation as Defendant was "very hesitant to talk" and acted like he was not present at the crime scene.

Further, to the extent that Defendant argues the trial court erred regarding the Detective's statements at issue, Defendant disputed these same statements on direct appeal. In his Initial Brief on direct appeal, Defendant argued in Issue Two that the Detective "repeatedly mentioned" during the interview that Defendant had been arrested pursuant to a warrant signed by a judge. Because this issue was previously raised on appeal and the First DCA did not deem these questions improper, Defendant is procedurally barred from raising it again in the instant motion seeking postconviction relief. See Phillips, 894 So. 2d 28, 35 n.6 (Fla. 2004) (rejecting defendant's postconviction claims as procedurally barred because the claims were raised and rejected on direct appeal); see also Hamilton, 875 So. 2d 586, 590 n.3 (Fla. 2004).

Resp. Ex. L at 182–84 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits, this Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. In applying such deference, this Court finds that the state court adequately determined that Petitioner did not show prejudice from trial counsel's alleged failure to redact parts of the recorded interview. First, Petitioner agreed to the stipulated version of the videotape played. Petitioner engaged in a colloquy with the trial court, acknowledging that he agreed with the decision to play a longer version of the interview. Resp. Ex. F at 71–74. Petitioner stated he reviewed that

26

decision with counsel and agreed to this defense strategy. Id. at 73. When asked if he had questions about playing the interview, Petitioner responded, "no, sir." Id. at 74.

Detective Cullen's discussion of the warrant during the interview provided context as to why law enforcement arrested Petitioner. As discussed by Detective Cullen during his trial testimony, the initial parts of the interrogation were meant to provoke a more responsive interview. Resp. Ex. D at 90–91, 98. The Florida Supreme Court has found law enforcement tactics, like these, to be admissible in Florida. Roundtree v. State, 145 So. 3d 963, 965 (Fla. 4th DCA 2014) ("[A] police officer's statements during an interrogation are admissible if they provoke a relevant response or provide context to the interview such that a rational jury could recognize the questions are interrogation techniques used to secure confessions."). Accordingly, even if counsel had moved to suppress or redact the discussion of the warrant, it would have been a meritless objection. Trial counsel cannot be held ineffective for failing to make a meritless objection. See Freeman, 536 F.3d at 1233.[9]

Upon thorough review of the record and the applicable law, this Court concludes that the state court's decision to deny Petitioner's claim was neither

---

[9] As noted in the trial court's order, Petitioner raised issues related to this portion of the interview on direct appeal in the context of trial court error. Resp. Ex. H at 29–30. The First DCA denied this claim and affirmed the judgment and sentence. Resp. Ex. K.

contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts in light of the evidence presented to the state court. <u>See</u> 28 U.S.C. § 2254(d).

To the extent Petitioner alleges counsel was ineffective for failing to challenge the underlying affidavit and arrest warrant because the officer wrote the incorrect year on the signature line of his affidavit, that claim is also without merit because the incorrect year on the date of the officer's signature is merely a scrivener's error. The court dated its signature correctly, which lends support for the fact that the officer's incorrect date was a scrivener's error. Resp. Ex. B at 0007; <u>See generally</u> <u>Velardi v. Walsh</u>, 40 F.3d 569, 576 (2d Cir. 1994) ("Warrants have been upheld despite "technical errors," such as an incorrect street address, when the possibility of actual error is eliminated by other information . . . ."); <u>United States v. Lowe</u>, No. 08-CR-340, 2009 WL 723344, at *1 (E.D. Wis. Mar. 17, 2009), <u>aff'd</u>, 389 F. App'x 561 (7th Cir. 2010) ("From this, it is apparent that the fact that the wrong month was typed into the jurat of the affidavit submitted in support of the warrant application was a mere scrivener's error. Clerical errors of this kind do not invalidate a warrant."). Thus, Ground Five is due to be denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.      If Petitioner appeals this Order, this Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[10]

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of September, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

---

[10] This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, this Court will deny a certificate of appealability.

C:      Corey Thomas, DOC # 127859
        Counsel of Record